**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**YVONNE E. COLLINS,**

**Plaintiff,**

**v.**

**CITY OF NORWOOD OHIO, et al.,**

**Defendants.**

**Case No. 1:23-cv-632**

**JUDGE DOUGLAS R. COLE**

**OPINION AND ORDER**

Plaintiff Yvonne E. Collins alleges that the Defendants in this case—a municipality, a hospital, and a collection of police officers and medical providers—violated a bevy of her federal constitutional rights over the course of a more-than-ten-day ordeal that started with her arrest and carried through into her involuntary detention for psychiatric treatment. (*See generally* Am. Comp., Doc. 25). So she sued those Defendants, raising a number of claims under 42 U.S.C. § 1983 and accompanying Ohio state law tort claims. (*Id.*). All of the Defendants, acting in groups roughly reflecting their professional affiliations, answered and promptly moved for partial judgment on the pleadings.[1] (Docs. 29, 31, 32). For the reasons stated below, the Court **GRANTS** those motions and **DISMISSES** Collins's § 1983 claims against the non-state-actor Defendants (identified below) and her state-law tort claims

[1] Two of the three motions are styled as requesting complete judgment on the pleadings. (Docs. 29, 32). But as explained below, they are more properly construed as motions for partial judgment on the pleadings.

against the state-actor Defendants (also identified below). But because Collins may be able to cure the deficiencies in both sets of claims if she can plead additional facts in response to the concerns the Court identifies in this Opinion, the Court dismisses the claims **WITHOUT PREJUDICE**.

## BACKGROUND[2]

This case's facts are straightforward, if troubling. Plaintiff Yvonne E. Collins lives alone in a break-in-prone neighborhood in Norwood, Ohio. (Am. Compl., Doc. 25, #162). The frequency of the break-ins, coupled with the sight of "an individual repeatedly staring at her and her property," put Collins on edge. (*Id.*). On October 3, 2022, those feelings came to a head. While washing her car in front of her home that day, a "strange man" (not a party to this case) accosted her "without any reason." (*Id.*). After arguing with Collins, the stranger called a police non-emergency line, reporting that Collins "flagged him down for help and then threatened him." (*Id.*).

City of Norwood police officers Ryan Harrison, Michael Castanias, and Kim Brucker (all of whom are Defendants here) responded to the stranger's call. (*Id.* at #163). Collins "reported the [stranger's] suspicious behavior" to the Officers, but instead of addressing her concerns, they "treat[ed] [her] as if she were mentally disturbed without any observation of any conduct that indicated" such a state of mind. (*Id.*). Officer Castanias cuffed Collins and "placed her in his police cruiser." (*Id.*). After that, the Officers—despite the fact they "had not witnessed any presence

[2] While the Court "must accept as true all [of Collins's] well-pleaded factual allegations" at this stage, *Bates v. Green Farm Condominium Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020), it reminds the reader that they are just that—allegations.

of a weapon or [] received any complaint of a weapon"—asked Collins if she had a weapon. (*Id.*). She responded truthfully: yes, her properly licensed gun was in her purse, which was in her car. (*Id.*). Without obtaining her consent, Officers Brucker and Harrison searched Collins's car and purse, seizing her handgun. (*Id.*).

Collins's misfortune didn't stop there. After Officers Brucker and Harrison searched for and seized Collins's firearm, Officer Castanias drove her to the University of Cincinnati Medical Center (UCMC)—another one of the Defendants here—for a 72-hour psychiatric hold under Ohio Revised Code § 5122.10. (*Id.* at #164). He "signed an affidavit requesting [Collins's] detention by UCMC without any observed behavior that would require said restraint, but merely stating that [she] owned and possessed a gun." (*Id.*).

For over ten days, Collins remained involuntarily confined at the UCMC. (*Id.*). By her telling, the UCMC's medical personnel didn't pay her case particularly close attention during that time. Upon her arrival, she "spoke to a social worker," Defendant Michelle Trenn. (*Id.*). "[W]ithout having performed any evaluation," Trenn and Defendant Dr. Rosemary Szparagowski (one of the two psychiatrists involved in Collins's case at the UCMC) filed affidavits with the Hamilton County Probate Court requesting Collins's detention for mental health evaluation. (*Id.*). And Defendant Dr. Michael Newton (the second of the two psychiatrists involved here) "signed an observation statement regarding [] Collins without having directly interacted with her," either. (*Id.*). The bottom line, in Collins's telling: all three medical personnel

"failed to properly interview [her], instead repeating allegations from Officer Castanias' affidavit." (*Id.* at #165).

Based on those allegations, Collins sued nine Defendants,[3] asserting eleven counts.[4] Broadly speaking, those Defendants fall into two groups. The first group—the Officer Defendants—comprises the three Officers present at Collins's home, along with Chief Dwayne Sumner and an indeterminate number of Unknown Officers Jane/John Does. The second group—the UCMC Defendants—includes the three medical personnel named above, along with the UCMC itself. But those groups aren't exhaustive: the City of Norwood, also a Defendant, doesn't fall into either one.

While the parties are relatively straightforward, the Complaint's counts require some untangling. Counts One through Nine raise claims under 42 U.S.C. § 1983, which allows individuals to sue state actors (or, more technically, persons acting "under color of" state law) for federal-rights deprivations. Many of those counts overlap. (*Compare, e.g.*, Doc. 25, #165–66 (Count One, alleging, among other things, that the Officer Defendants violated Collins's Fourth Amendment rights by unlawfully seizing her firearm), *with id.* at #166–67 (Count Two, alleging, among other things, the same violation)). So instead of merely listing them out, the Court

[3] Not counting the indeterminate number of John/Jane Does.

[4] Collins's initial Complaint (Doc. 1) raised six counts. After various Defendants moved to dismiss or for judgment on the pleadings, (*see* Docs. 20, 22), Collins moved to amend, (Doc. 23). With the parties' consent, the Court granted Collins's motion to file her Amended Complaint (Doc. 25), mooting the Defendants' dispositive motions without prejudice as to later refiling. (8/7/2024 Not. Order).

will sort them into the distinct claims it understands Collins to be pursuing against each Defendant (or group of Defendants).

Start with the § 1983 claims against the Officer Defendants. The Amended Complaint splits them into four separate counts. The Court understands those four counts to allege that the Officer Defendants violated Collins's (1) Second Amendment rights by confiscating her firearm; (2) Fourth Amendment rights by unreasonably searching and seizing her person and property; (3) Fifth Amendment rights by failing to inform her of her rights upon taking her into custody; and (4) Fourteenth Amendment rights by committing her to involuntary psychiatric treatment without due process.[5] (*Id.* at #165–68).

Relatedly, Collins brought a § 1983 claim against the City itself. She alleges that the City is municipally liable for failing to train or supervise the Officer Defendants, making it responsible for the Officer Defendants' federal-rights violations. (*Id.* at #171–72). This is typically called a *Monell* claim.

Moving on from the Officer Defendants and the City, the Amended Complaint also asserts four § 1983 counts against the UCMC Defendants. Those counts allege

---

[5] Technically, all of Collins's constitutional claims against the Officer Defendants arise under the *Fourteenth* Amendment, even if their substance lies in the Second, Fourth, or Fifth Amendments. That's because those latter amendments apply *directly* only to the federal government. But they've nonetheless been "incorporate[d]" into the Fourteenth Amendment and made applicable to the states, and therefore to state actors. *See Gammarino v. Sycamore Twp.*, No. 1:22-cv-200, 2024 WL 760097, at *4 n.7 (S.D. Ohio Jan. 22, 2024) (citing *Mapp v. Ohio*, 367 U.S. 643, 650–51 (1961) (incorporating Fourth Amendment)); *see also Malloy v. Hogan*, 378 U.S. 1, 6 (1964) (incorporating Fifth Amendment right against self-incrimination); *McDonald v. City of Chicago*, 561 U.S. 742, 770–78 (2010) (incorporating Second Amendment). For clarity, though, the Court will refer to the § 1983 claims arising under the Second, Fourth, and Fifth Amendments in terms of the substantive right claimed, channeled as they may be through the Fourteenth Amendment in this context.

that the UCMC Defendants violated Collins's (1) Fourth Amendment rights by unreasonably seizing her person; and (2) Fifth and Fourteenth Amendment rights by detaining her for psychiatric treatment without due process.[6] (*Id.* at #168–70).

Finally, Collins brought a single § 1983 count against all the Defendants together, alleging that they conspired to violate all of her foregoing constitutional rights. (*Id.* at #170–71).

Apart from the § 1983 claims, Collins also brought two state-law tort claims. The first, against the City, is for negligent and reckless hiring, retention, and supervision[7] (Count Ten). (*Id.* at #172–73). The second, against all Defendants, is for intentional infliction of emotional distress, or IIED (Count Eleven). (*Id.* at #173–74).

In responding to Collins's claims, the Defendants subdivided themselves differently from the Amended Complaint's groupings. Defendants Szparagowski and Newton—whom the Court will refer to as the Psychiatrist Defendants—answered, (Doc. 26), and moved for judgment on the pleadings, (Doc. 29). For the remainder of this Opinion and Order, the Psychiatrist Defendants are their own group—which means that the Court will use the "UCMC Defendants" label to refer only to Defendants Trenn and the UCMC. Thus understood, the UCMC Defendants also

---

[6] As explained above, *see supra* note 5, the Fourteenth Amendment is the conduit through which most of Collins's other constitutional claims flow. With respect to her due-process claim, though, things are a bit different. The Fifth Amendment's due-process guarantee (as opposed to the right against self-incrimination) applies only to *federal* actors, *see Luckett v. Turner*, 18 F. Supp. 2d 835, 838–39 (W.D. Tenn. 1998), so the Court treats the due-process claim as arising under only the Fourteenth Amendment's due-process guarantee, which covers state actors.

[7] The Court will refer to this claim as the "negligent-employment claim" for brevity's sake.

answered, (Doc. 28), and moved for judgment on the pleadings, (Doc. 32). Although the Psychiatrist and UCMC Defendants both styled their motions as seeking *full* judgment on the pleadings, they're more properly understood as motions for *partial* judgment on the pleadings, since neither one argues for judgment on Collins's state-law IIED claim. (*See generally* Docs. 29, 32). Finally, the Officer Defendants and the City—collectively, the Norwood Defendants—answered together, (Doc. 27), and moved for partial judgment on the pleadings on Collins's state-law claims, (Doc. 31), i.e., the non-§ 1983 claims. In other words, the Psychiatrist and UCMC Defendants are moving for judgment on the pleadings only as to Collins's § 1983 claims, while the Norwood Defendants are moving for judgment on the pleadings only as to Collins's state-law claims.

Collins, for her part, filed a single consolidated Response (Doc. 35) to the Defendants' motions, and the three Defendant groups replied, (Docs. 37, 38, 39). The matter is now ripe for the Court's review.

**LEGAL STANDARD**

When a defendant moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the analysis "generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farm Condominium Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), in turn, a plaintiff must allege "sufficient factual matter ... to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it

requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts for the Court "to draw the reasonable inference that the defendant is liable." *Id.* In determining whether the allegations meet that standard, the Court "construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take the allegations as gospel, no matter how unsupported they are. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up).

In other words, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (quotation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (quotation omitted). In short, a court will dismiss an action when "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

## LAW AND ANALYSIS

All three groups of Defendants moved for partial judgment on the pleadings. The Norwood Defendants argue that they're entitled to judgment on Collins's state-law claims. And the Psychiatrist and UCMC Defendants argue that they're not subject to liability on Collins's § 1983 claims. All three groups are correct. So, as explained further below, the Court dismisses the state-law claims against the Norwood Defendants (leaving in place the § 1983 claims against them), and inversely dismisses the § 1983 claims against the Psychiatrist and UCMC Defendants (leaving in place the state-law IIED claim against them).

### A. Collins's State Law Claims Fail, But Only as to the Norwood Defendants.

Only the Norwood Defendants moved for partial summary judgment on Collins's two state-law tort claims. (Doc. 31). First, with respect to the negligent-employment claim (which Collins brought only against the City), the City argues that Collins failed to plausibly allege the claim's required elements. Second, with respect to the IIED claim (which Collins brought against all the Defendants), the Norwood Defendants make the same argument: that Collins failed to plausibly allege its elements. Separately, and with respect to both state-law claims, the Norwood Defendants invoke state-law immunities for political subdivisions (for the City) and for public employees (for the Officer Defendants). The Court agrees that Collins failed to plausibly allege her negligent-employment claim, so it need not reach the City's assertion of immunity on that front. Inversely, because the Court agrees that Ohio law immunizes all the Norwood Defendants from the IIED claim, it need not reach

the question of whether Collins plausibly alleged that claim. The Court addresses both topics in turn.

### 1. Collins Failed to Plausibly Allege Her Claim for Negligent Hiring, Retention, and Supervision Against the City.

Collins's negligent-employment claim isn't adequately pleaded to survive a motion to dismiss. Claims of that sort are "negligence-based torts which require proof of the basic elements of negligence: duty, breach, proximate cause, and damages." *Simpkins v. Grace Brethren Church of Delaware*, 16 N.E.3d 687, 699 (Ohio Ct. App. 2014).

The negligent-employment claim stumbles on the very first element—duty. "The existence of an employer-employee relationship imposes a duty upon the employer to prevent *foreseeable* injury to others by exercising reasonable care to refrain from employing an incompetent employee." *Id.* (emphasis added). The trouble, as the City notes, is that Collins failed to plausibly allege that the municipality had any reason to foresee that its employees—the Officer Defendants—were injuriously incompetent. (*See* Doc. 31, #249). The Court can't find a single allegation in the Amended Complaint that, if true, would show, or even suggest, that the City had any reason to foresee that the Officer Defendants were bad hires or incompetent at their jobs. *See, e.g.*, *Simpkins*, 16 N.E.3d at 699–700 (explaining that the relevant inquiry is whether the employer "exercis[ed] reasonable care to refrain from employing an incompetent employee").

What's more, Collins made no effort in her Response to point out any allegations supporting the elements of her claim. Instead, she dove straight into

responding to the City's immunity argument. (Doc. 35, #292–94). That won't do. Because Collins failed to plausibly allege the very first element of her negligent-employment claim, the Court need not even reach the question of immunity. So the Court **GRANTS** the Norwood Defendants' request to **DISMISS** Collins's negligent-employment claim. But because the identified deficiency perhaps could be cured through additional pleading (at least if Collins has additional facts), that dismissal shall be **WITHOUT PREJUDICE**.

**2. Ohio Law Immunizes the Norwood Defendants from Collins's IIED Claim.**

The Norwood Defendants point to two state-law sources of immunity—one for the City, and the other for the Officer Defendants—to shield them from liability on Collins's IIED claim. The Court agrees that both apply.

First, the City invokes the "general grant of immunity" afforded to political subdivisions (like municipalities) under Ohio Revised Code § 2744.02. *Lambert v. Clancy*, 927 N.E.2d 585, 588 (Ohio 2010); (Doc. 31, #251). That shield protects political subdivisions from intentional torts claims like IIED. *Hubbard v. Canton City Sch. Bd. of Educ.*, 780 N.E.2d 543, 545–46 (Ohio 2002). And Collins doesn't argue otherwise in her Response, so the Court understands her to concede the point. (*See generally* Doc. 35, #292–96). True, she points to the exception for such immunity in Ohio Revised Code § 2744.02(B). (Doc. 35, #293). But she makes that argument only as to the negligent-retention claim—which as noted above fails for other reasons—not as to the IIED claim. And that makes sense, as that exception applies only to negligence actions, not intentional tort claims. Ohio Rev. Code § 2744.02(B)(2)

("Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by *the negligent performance of* acts by their employees with respect to proprietary functions of the political subdivisions." (emphasis added)); *see also Hubbard*, 780 N.E.2d at 545–46 (explaining that "[t]here are no exceptions to immunity [under Ohio Revised Code § 2744.02] for the intentional tort[] of … intentional infliction of emotional distress" (quotation omitted)).

Second, the Officer Defendants invoke the immunity granted to *employees* of political subdivisions under Ohio Revised Code § 2744.03. (Doc. 31, #251–52). Municipal employees are immune from liability unless they (1) acted "manifestly outside the scope of [their] employment or official responsibilities;" (2) acted with "malicious purpose, in bad faith, or in a wanton or reckless manner;" or (3) a provision of the Ohio Revised code expressly imposes liability on the employee. Ohio Rev. Code § 2744.03(A)(6); *see also Stager v. Hanshaw*, No. 1:23-cv-120, 2024 WL 1556708, at *11 (S.D. Ohio Apr. 10, 2024). Collins focuses her efforts on only the second exception, arguing that she has plausibly alleged conduct on the part of the Officer Defendants that "fall[s] squarely within" the carveout for reckless behavior. (Doc. 35, #295). The Court disagrees.

To see why Collins's allegations don't suffice to plausibly suggest the recklessness required to strip the Defendant Officers' immunity, it's helpful to look at what sorts of allegations passed muster in other cases. To start with, recklessness is characterized by "the conscious disregard of or indifference to a known or obvious

risk of harm … and is substantially greater than negligent conduct." *Rural Bldg. of Cincinnati, LLC v. Mercer*, 96 N.E.3d 882, 888 (Ohio Ct. App. 2017). In *Stager v. Hanshaw*, this Court explained that a defendant police officer acted recklessly—and therefore wasn't entitled immunity—where he'd "found [the plaintiff] sleeping in his car, opened his door, and battered him with 'unnecessary and dangerous physical maneuvers.'" 2024 WL 1556708, at *11. And in *Waddell v. Lewis*, another court in this district reached the same conclusion where the defendant police officer had "throw[n] [the plaintiff] from the porch" and "pepper sprayed him twice." No. 1:22-cv-635, 2024 WL 1071900, at *6 (S.D. Ohio Mar. 12, 2024). Finally, in *Shoup v. Doyle*, yet another court in this district found that the allegations sufficed to show recklessness at the pleading stage where the officer "knew that [the plaintiff] had just been physically assaulted, and she was visibly injured," but still "thr[ew] her to the ground" and "prevent[ed] her from immediately going to the hospital." 974 F. Supp. 2d 1058, 1091 (S.D. Ohio 2013).

Those examples share a common feature: plaintiffs who overcome the arresting officer's invocation of immunity based on the recklessness exception allege *more* than the arrest's mere unlawfulness. In the Court's review of the caselaw, the "plus factor" that ratchets an arresting officer's conduct from wrongful up to reckless—and therefore strips their immunity shield—is most often some form of violence. *See, e.g.*, *Burgess v. Fischer*, 735 F.3d 462, 480 (6th Cir. 2013) (finding a jury-triable issue on whether officers who "slammed [the plaintiff] to the ground," causing "serious facial and skull fractures," had acted recklessly).

Collins hasn't pointed to any such plus factor here, violence or otherwise. Indeed, her recounting of events paints a peaceful scene (at least insofar as an arrest can be peaceful). Collins describes how she was "placed … in handcuffs" after being informed that "it was for her safety," and that the Officers "inquired whether she had a weapon" before "transport[ing]" her to the UCMC. (Doc. 25, #163–64). Those actions could very well be unlawful—the subject of Collins's § 1983 claims against the Officer Defendants, which aren't presently before the Court—but there's no evidence that they were violent. And absent something of the sort, they do not plausibly establish recklessness.

For those reasons, the Court **GRANTS** the Norwood Defendants' request to **DISMISS** Collins's IIED claim against them. But since that claim's deficiencies again perhaps could be rectified as to the Officer Defendants with facts supporting a finding of recklessness, that dismissal is **WITHOUT PREJUDICE** as to those defendants only.

### B. Collins's § 1983 Claims Fail, But Only as to the Psychiatrist Defendants and the UCMC Defendants.

Only the Psychiatrist Defendants and the UCMC Defendants moved for judgment on the pleadings with respect to Collins's § 1983 claims against them. As a reminder, those claims are identical as between the two groups—Collins lumped them all under the label "UCMC Defendants," as described earlier. And those claims all spring out of those Defendants' participation in Collins's involuntary confinement for psychiatric treatment under Ohio Revised Code § 5122.10. (*See* Doc. 25, #168–70). Each group argues it is entitled to judgment in its favor for a variety of different

reasons. One shared argument—that neither the Psychiatrist Defendants nor the UCMC Defendants qualify as "state actors" subject to liability under § 1983—carries the day for both groups, so the Court will focus its attention there.

Generally speaking, § 1983 doesn't "prohibit the conduct of private parties acting in their individual capacities."[8] *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co.*, 780 F. App'x 197, 204 (6th Cir. 2019) (quotation omitted). But in three situations, that general rule gives way: (1) when the private entity's conduct "concern[s] traditionally exclusive governmental functions;" (2) when the private entity's conduct "reflect[s] entwinement, a nexus, or joint action with state officials;" and (3) when the private entity's conduct "involve[s] compulsion by the government." *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 281–82 (6th Cir. 2023). In those three circumstances, a private entity's "actions so approximate state action" that it may be held liable under § 1983. *Snodgrass-King*, 780 F. App'x at 204.

[8] It bears noting that the UCMC itself, though bearing the name of a public institution—the University of Cincinnati—appears to be a private party (and Collins hasn't alleged or argued otherwise). According to the Ohio Secretary of State's business records—of which this Court can take judicial notice, *see Overall v. Ascension*, 23 F. Supp. 3d 816, 824–25 (E.D. Mich. 2014)—the UCMC's moniker is a trade name for a privately organized, non-profit entity called University Hospital, LLC. *See* Articles of Incorporation for University Hospital, Inc. (articles of incorporation for predecessor entity), https://perma.cc/6EY2-UTXC; Certificate of Conversion for University Hospital, LLC (converting predecessor corporation into an LLC), https://perma.cc/8FLV-RAH2; Trade Name Renewal for University Of Cincinnati Medical Center (assigning "University of Cincinnati Medical Center" trade name to University Hospital, LLC), https://perma.cc/D7RR-PARB. Simply stated, the mere fact that the UCMC bears the name of a public institution doesn't automatically turn it into one, especially in the absence of any non-conclusory allegations explaining how it's a public institution. *See, e.g.*, *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (affirming dismissal where "[n]othing in [the plaintiff's] complaint suggests that" the defendant-hospitals were state actors); *Vires v. Univ. of Louisville Hosp.*, No. 3:12-cv-P488, 2013 WL 173953, at *3 n.1 (W.D. Ky. Jan. 16, 2013).

None of the three tests for state action work for Collins, even accepting all her allegations as true. First, on the exclusive-governmental-function test, the Sixth Circuit has explained that plaintiffs are required to furnish "some historical analysis to determine whether an action is one traditionally the exclusive prerogative of the state." *Ellison v. Univ. Hospital Mobile Crisis Team*, 108 F. App'x 224, 227 (6th Cir. 2004) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 196 (6th Cir. 1995)). Collins's Amended Complaint and responsive briefing are both bereft of any such analysis. Instead, she argues flatly that the text of Ohio Revised Code § 5122.10—the statute allowing private actors to take "person[s] with mental illness" into custody for treatment—"shows that involuntary commitment is a function deeply rooted in state authority." (Doc. 35, #285). That doesn't cut it. And her assertion of that bare legal conclusion offers no reason to depart from the Sixth Circuit's contrary conclusion that "as the law currently stands, traditional authority for involuntary commitment is not exclusive to the state in Ohio," since "private actors have had authority to commit people involuntarily for around two hundred years." *Ellison*, 108 F. App'x at 226–27. In other words, neither the Psychiatrist Defendants nor the UCMC Defendants exercised a role traditionally within the government's exclusive domain when they detained Collins for psychiatric treatment, so they aren't state actors on that theory.

Second, Collins hasn't alleged facts showing "a sufficiently close nexus between the government" and the Psychiatrist and UCMC Defendants' conduct. *Kister v. Henry*, No. 2:12-cv-119, 2014 WL 12770095, at*8 (S.D. Ohio Mar. 13, 2014). The closest that Collins comes is by alleging that her involuntary commitment was

initiated by the police, and that these Defendants merely parroted the police's allegations of Collins's mental state in their statutorily-required affidavits justifying her detention. (Doc. 25, #164–65). But as another court in this district explained, "the fact that [a medical provider] was made aware of Plaintiff's medical condition from [the police] does not transform his private activity of writing [an affidavit supporting involuntary commitment] into state activity" under the nexus test. *Kister*, 2014 WL 12770095, at*8. While it may have been wrongful, either as a matter of medical best-practices or of state law (neither of which is before the Court), for the Psychiatrist and UCMC Defendants to detain Collins for treatment if they truly hadn't examined her to determine for themselves whether such detention was necessary, that doesn't entwine them with the state for purposes of § 1983 liability.

Finally, Collins hasn't alleged that the government compelled the Psychiatrist or UCMC Defendants to detain her for psychiatric treatment. To make that showing, she'd have to allege facts that making it plausible that the government "offered [these Defendants] such significant encouragement that [their] choice must in law be deemed to be that of the State." *Ciraci*, 62 F.4th at 283 (cleaned up). When that "encouragement" rises to the level of a mandate or requirement imposed on the private actor by the government, the coercion theory comes into play. *Id.* But where the government "let[s] [the private party] decide on its own" who should be detained for psychiatric treatment, and the private party "exercise[s] that discretion, the government did not coerce it." *Id.* at 283–84. Here, Collins alleges only that Officer Castanias (whose status as a government actor isn't in question) delivered Collins to

the Psychiatrist and UCMC Defendants and "request[ed]" that they detain her under Ohio Revised Code § 5122. (Doc. 25, #164–65). From that point forward, it was the Psychiatrist and UCMC Defendants' *own* choice to "sign[] and file[] affidavits with the probate court" to meet that statute's requirements for involuntary detention—or, at the very least, Collins doesn't allege that they were coerced into doing so. (*Id.*).

At bottom, the Psychiatrist and UCMC Defendants are all private entities. And even though private entities' conduct can constitute state action in some circumstances, Collins failed to allege any such circumstances here. For that reason, the Court **GRANTS** the Psychiatrist and UCMC Defendants' motions and **DISMISSES** Collins's § 1983 claims against them. But because Collins could plausibly allege further factual matter satisfying one of the three state-action tests for private entities, that dismissal shall be **WITHOUT PREJUDICE**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** all three pending motions for judgment on the pleadings as construed above. More specifically, the Court **GRANTS** the Norwood Defendants' Motion for Partial Judgment on the Pleadings (Doc. 31) and **DISMISSES** Counts Ten and Eleven, but only to the extent that they apply to the Norwood Defendants, leaving the IIED claim (Count Eleven) in place with respect to the Psychiatrist and UCMC Defendants. The Court also **GRANTS** the Psychiatrist and UCMC Defendants' Motions for Judgment on the Pleadings (Docs. 29, 32), subject to the understanding that they are properly construed as motions for *partial* judgment on the pleadings directed only to Collins's § 1983 claims. Therefore, the

Court **DISMISSES** Counts One through Nine, but only to the extent that they apply to the Psychiatrist and UCMC Defendants, leaving them in place with respect to the Norwood Defendants. Finally, those dismissals shall be **WITHOUT PREJUDICE**, since each claim's deficiencies can be rectified if Collins elects to move for leave to plead additional factual matter.

**SO ORDERED.**

July 18, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**